UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MICHAEL GRAHAM and<br>BARBARA GRAHAM<br><br>    Plaintiffs,<br><br>v.<br><br>WAL-MART STORES EAST, LP,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   Cause No. 1:24-cv-323-HAB<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Plaintiffs, Michael Graham ("Michael") and Barbara Graham, sued Defendant Walmart Stores East LP ("Walmart") after Michael allegedly slipped and fell on some ice in the parking lot of Walmart's store. (ECF No. 1). Walmart now moves for summary judgment against Plaintiffs arguing that it lacked the requisite knowledge of the ice in the parking lot where Michael fell. (ECF Nos. 14, 15). Plaintiffs argue not so, and after they responded, Walmart also moved to strike several statements made in the Affidavit (ECF No. 20-1) of Plaintiffs' safety expert. (ECF No. 24). Those motions are now fully briefed (ECF Nos. 15, 20, 23, 25-27) and ripe for ruling.

### I.    Factual Background

Walmart operates a store located on Maysville Road in Fort Wayne, Indiana ("Maysville Store"). (ECF No. 16, ¶ 1). Walmart employees pride themselves on providing a safe environment to its associates and customers. (*Id.* ¶ 2). In line with this aim, Walmart trains every associate in safety through courses on how to keep hazardous conditions at bay and conducts weekly safety meetings. (*Id.* ¶ 4). All Walmart associates share the safety task of periodically monitoring Walmart's premises to ensure hazardous-free conditions, including its parking lots. (*Id.* ¶ 3).

Walmart also employs front end associates who are responsible for overseeing the parking lot's conditions. (*Id.* ¶ 5). And it contracts with a third-party company, Divisions, to care for and maintain its parking lot. (*Id.* ¶ 7). As part of their services, Divisions will pre-treat the parking lot by using a substance to prevent ice build-up. (*Id.* ¶ 10). While Walmart associates handle self-salting on Walmart's sidewalks and entrances when the weather requires, Walmart's general policy is to contact Divisions to salt and remove snow from its parking lot. (*Id.* ¶ 8). Even if there is only a single patch of ice in the lot, Walmart associates will call Divisions to salt the entire parking lot. (*Id.* ¶ 9).

On February 24, 2024, Walmart was expecting snow at the Maysville Store. (*Id.* ¶ 12). It thus had Divisions salt its parking lot twice that morning, the second between 5 and 6 a.m. (*Id.*). Salting was done twice to ensure the effectiveness of pre-treating the parking lot for ice as snow removal services are less effective when there is heavy traffic from Walmart customers. (*Id.* ¶ 13).

At 7:15 p.m. that day, Michael and some co-workers went to the Maysville Store. (*Id.* ¶ 15). As he stepped out of his vehicle, he slipped and fell on ice. (*Id.* ¶ 15). At his deposition, Michael admitted that he did not look down to see where he was stepping prior to exiting the vehicle. (*Id.* ¶ 19). He also testified that the condition of the parking lot looked dry as he was driving up, and did not have any trouble walking from his vehicle into the Maysville Store nor walking across the lot upon leaving. (*Id.* ¶ 21). And he did not inform any Walmart associate of the ice in the parking lot where he fell. (*Id.* ¶ 22). Indeed, he never reported the incident on February 24. (*Id.* ¶ 23).

Throughout this litigation, Plaintiffs hired an expert, Bill Wallace ("Wallace"), to "review and evaluate whether [Walmart] exercised the necessary high standard of reasonable care to protect Michael Graham from the hazard of ice in the parking lot." (ECF No. 20 at 6). He took photographs

2

months after the incident where water had accumulated in depressions in the parking lot, including the area where Michael fell. (ECF No. 20-1 at 22-24). Wallace also obtained the weather data from February 24, 2024. (*Id.* at 3-8). Those records show that, on the date of Michael's fall, there was one inch of snow with temperatures ranging from 21 to 34 degrees Fahrenheit. (*Id.*). The temperature was above freezing until 3:00 a.m., but thereafter temperatures were consistently below freezing. (*Id.*). Wallace thus opined that because "[t]here was no plowing or de-icing treatment…after 6:00 a.m.[,]…[b]y 7:15 p.m. ice would have formed in the depressions" in the parking lot. (*Id.* at 37). He also stated that "[a] reasonable person would understand that [a] wet surface and/or standing water will freeze if the temperature is below 32 degrees[.]" (*Id.*).

## II.    Summary Judgment Standard[1]

Summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n order to withstand summary judgment, the nonmovant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations." *Gabrielle M. v. Park Forest-Chicago Heights., Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003). Still, a court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650 (2014).

---

[1] In is Response to Walmart's Motion for Summary Judgment, Plaintiffs make various arguments under the summary judgment standard used by Indiana state courts. (ECF No. 20). Under the *Erie* doctrine, federal courts exercising diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 428 (1996). The court thus applies the federal standard for summary judgment and Indiana substantive law with respect to Plaintiffs' premises liability claim. Even one case cited by Plaintiffs acknowledge the differing standards. *See Converse v. Elkhart General Hospital, Inc.,* 120 N.E.3d 621, 624 (Ind. Ct. App. 2019) ("Contrary to the federal standard which permits the moving party to merely show the party carrying the burden of proof lacks evidence on a necessary element, Indiana law requires the moving party to 'affirmatively negate an opponent's claim.'"); *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. Ct. App. 2014) ("[W]e have long recognized that Indiana's summary judgment procedure… diverges from federal summary judgment practice. In particular, while federal practice permits the moving party to merely show that the party carrying the burden of proof lacks evidence on a necessary element, we impose a more onerous burden: to affirmatively negate an opponent's claim."). Any argument under Indiana's "more onerous" summary judgment standard is thus misplaced. *See Converse,* 120 N.E.3d at 624.

The Court's role is not to weigh the evidence or evaluate the credibility of the witnesses. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But the "non-movant does not satisfy its burden merely by pointing to self-serving allegations that otherwise are without evidentiary support." *Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994). Indeed, "summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005), *cert. denied*, 546 U.S. 1033 (2005) (quotations omitted).

### III. Discussion

Walmart now moves for summary judgment on Plaintiffs' negligence claim[2] arguing that it lacked knowledge of the ice that Michael fell on. In response and largely based on Wallace's Affidavit, Plaintiffs argue that it had constructive knowledge of the ice based on the weather conditions on February 24, 2024. Contemporaneous with its reply, Walmart moved to strike Wallace's Affidavit for a variety of reasons. Indeed, whether Plaintiffs' claim survives summary judgment hinges on the admissibility of Wallace's opinions. The Court thus starts with Walmart's Motion to Strike before reaching the merits of Plaintiffs' claim.

### A. Motion to Strike

Affidavits supporting a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion."

---

[2] Plaintiff Barbara Graham is Michael's wife and has brought a derivative claim for loss of consortium. Whether her claim survives depends on the outcome of Michael's negligence claim. *See, e.g.*, *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014).

*Paniaguas v. Aldon Cos.*, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148–49 (7th Cir. 1989)). Relevant here, "Rules 702 and 704 [of the Federal Rules of Evidence] prohibit experts from offering opinions about legal issues that will determine the outcome of a case." Nor can an expert such as Wallace "offer an opinion on what the law requires or permits because the judge, not the witness, instructs the jury about the relevant law." *United States v. Caputo*, 382 F. Supp. 2d 1045, 1049 (N.D. Ill. 2005). But "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.

The Court is also required to exclude expert testimony "based upon speculation, unsupported assumptions, or conclusory allegations." *Buscaglia v. United States*, 25 F.3d 530, 533 (7th Cir. 1994). "For an expert opinion to have a proper foundation, there must be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *Bezingue v. Steuben Lakes Reg'l Waste Dist.*, 507 F. Supp. 3d 1021, 1030 (N.D. Ind. 2020).

With this backdrop, Walmart first argues that paragraphs 9 through 16 should be stricken because they are "a series of assumptions" based on "unreliable and incomplete facts." (ECF No. 25 at 5-6). These paragraphs can be properly couched as factual assertions based on the weather data that Wallace obtained and photographs that he took of the Maysville Store parking lot. Walmart calls the opinions therein "speculation" because the weather data was acquired from the Fort Wayne Airport which is located about 20 miles from the Maysville Store. And Walmart points out that the photographs were taken months after the incident and under a different set of circumstances.

The Court does not believe that Wallace purely speculated on the weather conditions at the Maysville Store because the weather data was from a mere 20 miles away. Nor does the Court

5

believe he speculates on the way water pooled in the parking lot simply because they were taken months after the incident when the weather was warmer. What Wallace did do was make assumptions that the conditions were similar when Michael based on the weather data and photographs. True, Wallace cannot base his testimony on "unsupported assumptions," *Buscaglia,* 25 F.3d at 533, but "[t]he question is not whether the opinion is based on assumptions, but whether there is some factual support for them." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006). When there is factual support, "it is for the jury, properly instructed, to determine the credibility of the witnesses and thus the weight to be given to the expert opinion." *Id.* And to pass Rule 702 scrutiny, there need only be a "rational connection between the data and the opinions." *Manpower, Inc. v. Ins. of Pa.,* 732 F.3d 796, 809 (7th Cir. 2013). The connections Wallace drew, though not perfect line for line, are rational.

It is rational to believe that there would be similar weather conditions just 20 miles away from where Michael's fall occurred. And it is rational to believe that the temperatures in those areas would rise and fall in a similar fashion. It is thus reasonable to assume that the weather data from 20 miles away would reveal similar results to that of the Maysville Store on February 24. As for the pictures, Walmart does not argue that the parking lot has faced substantial changes from the date of Michael's fall to the date on which they were taken. Although temperatures were not freezing and rain had just fallen, it is still reasonable to assume that water would have pooled in a similar manner.

Walmart has done a laudable job of pointing out some weaknesses in the connections between Wallace's data and his opinions. But that does not render them unsupported. Walmart is simply "questioning the underlying facts or the correctness of [Wallace's] opinion[s]." *Ball Corp. v. Air Tech of Michigan, Inc*., 2022 WL 1801120, at *5 (N.D. Ind. June 2, 2022). But declining to

strike those opinions here will not prevent them from exposing those weaknesses down the road; Rather, "these are potential lines for cross examination." *Id.*

Factual contentions aside, Walmart also argues that the Court should strike paragraphs 17 to 19 of Wallace's Affidavit because those assertions are inadmissible legal opinions:

17. There was no plowing or de-icing treatment given to the Wal-Mart parking lot after 6:00 a.m. on February, 2024. By 7:15pm, ice would have formed in the depressions, which created a hazardous condition to business invitees where Michael Graham fell.

18. A reasonable person would understand that wet surface and/or standing water will freeze if the temperature is below 32 degrees. Reasonable care should be taken to salt more than once a day and to survey the parking lot for standing pools of water or slick spots.

19. Wal-Mart's failure to perform these functions was the responsible cause of Michael Graham's falling and suffering injuries…

(ECF No. 20-1 at 37). Moreover, it points out that Wallace was hired to determine "whether Walmart satisfied its duty to provide the highest level of reasonable care to Michael Graham, a business invitee on February 24, 2024[.]" (*Id.* at 36). These statements, Walmart argues, are purely legal conclusions. *See Leftridge v. Speedway LLC,* 2019 WL 5092514, at *2 (N.D. Ind. Oct. 10, 2019) (holding that plaintiff's expert could not "testify as to the ultimate issue of whether Defendant adhered to industry standards, whether Defendant breached its duty of care to Plaintiff, whether Defendant was a proximate cause of Plaintiff's injury, or otherwise specifically address the ultimate legal issue of Defendant's alleged negligence"). Indeed, Wallace's assertions appear to track the elements of a negligence claim. *See Goodwin v. Yeakle's Sports Bar & Grill, Inc.,* 62 N.E.3d 384, 386 (Ind. 2016) ("[T]o prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty.").

Plaintiffs respond that the "[a]dmissibility of the [statements] turns on interpretation[,]" *Estate of Rice v. Corr. Med. Servs.*, 596 F. Supp. 2d 1208, 1220 (N.D. Ind. 2009), and that they should be "interpreted as adhering to meanings common in [Wallace's] field of expertise: safety." (ECF No. 10 at 10). *Estate of Rice* was an Eighth Amendment case and, as part of the claim, the plaintiff was required "to establish deliberate indifference" by demonstrating that the defendant doctor knew the plaintiff's "medical condition was serious and yet turned a blind eye to his need for treatment." *Id.* The plaintiff's expert opined and the parties quibbled over his statement that "[the defendant] showed indifference to [the plaintiff's] serious medical condition by turning a blind eye to the likely outcome of a return to jail[;]" exactly what the plaintiff needed to prove for a successful claim. *Id.*

The court determined that the statement, though it contained legalese, could be interpreted in two ways: one admissible and one not. If the Court construed it as a legal conclusion, it would be inadmissible. *Id.* But "if the statement is understood as [the plaintiff's expert] simply trying to use English, rather than legal terms, to express his opinion on [the defendant's] conduct, it ceases to be an opinion on the law." *Id.* at 1221. The Court went on to allow the statement erring on the side of admissibility.

Admittedly, paragraphs 17-19 of Wallace's Affidavit are riddled with premises liability legalese. The Court nonetheless believes that they are subject to admissible interpretations. As for paragraph 17, Walmart takes issue with this portion: "By 7:15pm, ice would have formed in the depressions, which created a hazardous condition to business invitees where Michael Graham fell." But Wallace does not say that ice did form, only that it would have formed absent de-icing or plowing, and create a hazardous condition. The use of "hazardous condition to business invitees" is problematic. *See Burrell v. Meads,* 569 N.E.2d 637, 639-40 (Ind.

8

1991) (quoting Restatement (Second) of Torts § 343 (1965*)* ("A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land…"). But like the term "indifference" in *Estate of Rice*, "hazardous condition" is used in plain English. And although he uses the term "business invitee," he does not define Michael as much. Moreover, it seems odd that Walmart would even challenge Wallace's use of "business invitee" because it admits in its motion for summary judgment that "Michael was a business invitee" before Wallace's Affidavit was ever filed. (ECF No. 15 at 6).

The same goes for paragraph 18 and Plaintiffs use of "reasonable person" and "reasonable care." While they could be interpreted as defining the standard of care, it could also simply be Wallace using those terms to give his opinion as a safety expert. And paragraph 19's use of "responsible cause[,]" while close to causation, could likewise be his opinion as a safety expert. As it relates to paragraph 5, Wallace does not even make a conclusion; he merely states what he was hired to do. Nowhere in the Affidavit does Wallace state whether Walmart satisfied or failed to satisfy its standard of care. And although the statement does define Wallace as a business invitee, again, Walmart admits that this is the truth. Indeed, the Court could foresee a stipulation regarding Michael's status as an invitee should this case proceed to trial. While these opinions raise eyebrows and present a somewhat close call, they are "not objectionable just because [they] embrace[] an ultimate issue." Fed. R. Evid. 704.

"If [Wallace] were to offer his opinion in such terms at trial, the court likely would sustain an objection and direct that it be rephrased, lest the jury think it was hearing an opinion on the law." *Estate of Rice,* 596 F. Supp. 2d at 1221. But this is not trial. "Because the court can, and will

9

limit its consideration of the challenged statements to admissible uses, the court denies the motion to strike."[3] *Id.*

Walmart's Motion to Strike (ECF No. 24) is thus DENIED.

**B. Motion for Summary Judgment**

Having resolved Walmart's Motion to Strike, the Court now turns to the merits. A negligence claim under Indiana law has three elements: "(1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Goodwin,* 62 N.E.3d at 386. In the premises liability context, "the nature and extent of a landowner's duty to persons coming on the property is defined by the visitor's status as an invitee, a licensee, or a trespasser." *Harradon v. Schlamadinger*, 913 N.E.2d 297, 300 (Ind. Ct. App. 2009) (citing *Rhoades v. Heritage Inv., LLC*, 839 N.E.2d 788, 791 (Ind. Ct. App. 2005)). The parties agree that Michael was a business invitee when he fell, and thus, Walmart owed him a duty to exercise reasonable care for his protection while he was on the premises. *See, e.g.*, *Rogers v. Martin*, 63 N.E.3d 316, 322 (Ind. 2016).

Indiana has adopted the Restatement (Second) of Torts when it comes to a landowner's duty to a business invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
> a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> c) fails to exercise reasonable care to protect them against the danger.

---

[3] In opposition, Walmart relies on *Leftridge v. Speedway LLC*, 2019 WL 5092514 (N.D. Ind. Oct. 10, 2019). But that case concerned a motion to exclude portions of an expert report as trial approached. That report would have been presented to the jury and there is no concern here that the jury would take Wallace's opinion as legal in nature.

*Podemski v. Praxair, Inc.,* 87 N.E.3d 540, 547 (Ind. Ct. App. 2017) (quoting Restatement (Second) of Torts § 343). And "before liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger." *Austin v. Walgreen Co.,* 885 F.3d 1085, 1088 (7th Cir. 2018) (quoting *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012)).

To that end, Walmart argues that it had no knowledge of the ice where Michael fell. There is no evidence of actual knowledge. Nobody told a Walmart employee that there was ice in the parking lot. Nor is there any evidence that a Walmart employee saw ice in the area where Michael fell. Plaintiffs' case thus rises or falls on whether Walmart had constructive knowledge of the danger. And here, Plaintiffs' case survives.

Indiana courts have defined constructive knowledge as a "condition which has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care." *Schulz*, 963 N.E.2d at 1144. Walmart relies on *Piotrowski v. Menard, Inc.*, 842 F.3d 1035 (7th Cir. 2016), a slip and fall case where the plaintiff fell on some landscaping rocks. Applying Illinois law, the Seventh Circuit affirmed summary judgment for the defendant because the plaintiff admitted she did not see the rocks when she fell and had no evidence of how longs the rocks were on the pavement. *Id.* at 1040. The court thus concluded that the plaintiff could not establish the defendant's constructive knowledge of the hazard absent some evidence of how long the rocks were present. *Id.*

But *Piotrowski* is distinguishable and readily so. Most glaringly, that case applied Illinois premises liability law; it did not speak to Indiana law. And here, unlike the plaintiff in *Piotrowski,* there is some evidence for a jury to conclude that ice would have formed in the parking lot. *See Reid v. Kohl's Dept. Stores, Inc.*, 545 F.3d 479, 482 (7th Cir. 2008) (applying Illinois law) ("Absent

11

any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice."). Michael may have testified in his deposition that he did know how long the ice was present in the parking lot where he fell and that he did not see the ice. But he does not come empty-handed.

Wallace opined that water could have formed in the depressions in the parking lot within 30 minutes if the temperature fell below 32 degrees. He took pictures of water pooling in the parking spot where Michael fell, despite that picture being taken some months later. The weather data shows that the temperature—albeit about 20 miles away—was 32 degrees or below from 4:00 a.m. until Michael's fall about 15 hours later. Walmart did not treat their parking lot after 6:00 a.m. with Wallace, a safety expert, opining that more ought to have been done to protect the public under the circumstances.

Given these disputed facts, "there were 13 hours for ice to from in the parking lot." (ECF No. 20 at 10). And no case applying Indiana law cited by Walmart addresses facts such as this. *See Bell v. Walmart,* 2023 WL 6307763 (N.D. Ind. Sept. 27, 2023) (the plaintiff fell on an indoor puddle); *Austin,* 885 F.3d 1085 (the plaintiff fell on water pooling inside a retail store); *Blasko v. Wal-Mart Stores, Inc.*, 2019 WL 1318089 (N.D. Ind. Mar. 21, 2019) (the plaintiff fell on yogurt in a store aisle); *Abels v. Kroger Ltd. P'ship I,* 2015 WL 7738070 (S.D. Ind. Dec. 1, 2015) (the plaintiff fell on a clear liquid substance within the store). Indeed, Walmart is correct insofar as "general knowledge of potential hazards is not enough" to survive summary judgment:

> But just because the assistant manager knew that hazards were possible does not mean that he knew they had actually materialized at the place where Austin fell. There are many potential hazards that can exist in a store like Walgreens: soda bottles can fall off a display stand and leak, glass cosmetics jars can shatter on the floor, or toys could clutter an aisle. That any of those hazards and many others *could* occur at any given moment probably ought to be on the mind of a person charged with managing a store, but that does not automatically impute instantaneous knowledge of when those hazards come about.

*Bell v. Walmart,* 2023 WL 6307763, at *4 (quoting *Austin,* 885 F.3d at 1089). But there is evidence of more than just general knowledge here. This is not a case where a million potential hazards could have spilled in Walmart's aisles at any given time; Michael fell on ice during a cold day. A jury could thus find that Walmart knew of the ice which, according to Plaintiffs' safety expert, had 13 hours to form.

To survive summary judgment, Plaintiffs must present evidence that the ice "existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if [Walmart] had used ordinary care." *Schulz*, 963 N.E.2d at 1144. Viewing the evidence in the light most favorably to Plaintiffs, as the Court must at this stage, they have done that much.

### IV.    Conclusion

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 14) and Defendant's Motion to Strike (ECF No. 24) are DENIED.

SO ORDERED on July 25, 2025.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT